IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| TRIOPTIMA AB, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO.  2:19-CV-00390-JRG |
| | § | |
| QUANTILE TECHNOLOGIES LIMITED, | § | **[FILED UNDER SEAL]** |
| | § | |
| *Defendant*. | § | |

## ORDER

Before the Court is Quantile Technologies Limited's ("Quantile") Renewed Motion to Dismiss for Lack of Personal Jurisdiction, or, in the Alternative, to Transfer Venue (the "Motion"). (Dkt. No. 76). The Court heard oral argument on the Motion on September 4, 2020. (Dkt. No. 90). The Court ordered limited jurisdictional discovery and supplemental briefing on the Motion. (Dkt. No. 88). Having considered the Motion, the original briefing, oral arguments, and the supplemental briefing, the Court finds that the Motion should be **GRANTED**.

## I.     INTRODUCTION

### a.  Procedural Background

On November 26, 2019, TriOptima AB ("TriOptima") filed a complaint against Quantile alleging that Quantile infringes seven of its U.S. Patents (the "Asserted Patents") relating to a centralized multilateral system for Over-the-Counter ("OTC") derivative transactions and compression. (Dkt. No. 1). On March 16, 2020, TriOptima filed its First Amended Complaint where it added allegations that Quantile misappropriated its related trade secrets, tortuously interfered with TriOptima's business contracts, and acted in violation of Texas unfair competition

laws. (Dkt. No. 25). On March 30, 2020, Quantile moved to dismiss the First Amended Complaint for lack of personal jurisdiction. (Dkt. No. 36). On August 5, 2020, TriOptima filed its Second Amended Complaint. (Dkt. No. 73). On August 13, 2020 Quantile again moved to dismiss the Second Amended Complaint for lack of personal jurisdiction or in the alternative to transfer venue to the Southern District of New York. (Dkt. No. 76). Subsequently, the Court expedited briefing on the Motion and set it for hearing. (Dkt. No. 79) The Court heard oral argument on September 4, 2020 and ordered limited jurisdictional discovery and supplemental briefing. (Dkt. Nos. 90, 106). Jurisdictional discovery and the accompanying supplemental briefing were completed on October 12, 2020. (Dkt. Nos. 109, 112).

### b. Factual Background

TriOptima is a private limited company organized and existing under the laws of Sweden. (Dkt. No. 73 at 4). TriOptima maintains its principal place of business in Stockholm, Sweden. (*Id.*). Quantile is a company organized and existing under the laws of the United Kingdom with its principal place of business in London. (*Id.*). Quantile offers derivative compression and optimization services to its customers. "These services allow banks who enter into derivatives contracts to 'compress' these trades, reducing the total number or value of trades in their portfolios without altering their market risk positions." (Dkt. No. 76 at 7). Quantile's customers in the United States are comprised of mainly financial institutions such as Bank of America, Merrill Lynch, Citibank, Goldman Sachs, JPMorgan Chase, and Morgan Stanley, among others. (Dkt. No. 73 at 6).

TriOptima claims that this Court has personal jurisdiction over Quantile because "Quantile, directly or through its subsidiary or intermediaries, has sufficient minimum contacts with this forum as a result of business conducted within the State of Texas, and/or pursuant to Fed. R. Civ. P.

4(k)(2)." (*Id.* at 5). Further, TriOptima claims that this Court has personal jurisdiction because "Quantile has committed acts of infringement in violation of 35 U.S.C. § 271 and has placed infringing products into the stream of commerce, through an established distribution channel, with the knowledge and/or understanding that such products will be used by customers in the State of Texas." (*Id.*). Specifically, TriOptima claims that Quantile's customers have a presence in Texas, and that Quantile expects its services to be purchased in Texas. (*Id.* at 6). Further, TriOptima alleges that "the infringing compression and optimization services rely on commodity derivatives contracts, for example the trade of futures contracts on underlying commodities, where the commodities are based and maintained in the State of Texas." (*Id.*). Essentially, TriOptima claims that this Court has personal jurisdiction over Quantile because Quantile has *customers* who have a presence in Texas and who use Quantile's services.

TriOptima also claims that this Court has personal jurisdiction over Quantile because Quantile took actions in furtherance of its trade secret misappropriation in the United States and the State of Texas by using TriOptima's trade secrets to sell its allegedly infringing products and services. (*Id.* at 7).

## II.     LEGAL AUTHORITY

Federal Rule of Civil Procedure 12(b)(2) requires a court to dismiss a claim if the court does not have personal jurisdiction over the defendant. Fed. R. Civ. P. 12(b)(2). It is the plaintiff's burden to establish that personal jurisdiction exists, but the plaintiff only needs to present facts to make out a *prima facie* case supporting such jurisdiction. *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000). "The Court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). Additionally,

conflicts between the facts contained in the parties' affidavits must be resolved in favor of the plaintiff for the purpose of determining whether a *prima facie* case for personal jurisdiction has been made. *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990).

There are two steps to determine whether a federal court may exercise personal jurisdiction over a nonresident defendant: (1) the forum state's long-arm statute must confer personal jurisdiction over that defendant; and (2) the exercise of personal jurisdiction must comport with the Due Process Clause of the Fourteenth Amendment. *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009). "As the Texas long-arm statute extends as far as constitutional due process allows," the Court only needs to consider the second step of the inquiry. *Id.*; *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007); *see also Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008) ("Because the Texas long-arm statute extends to the limits of federal due process, the two-step inquiry collapses into one federal due process analysis.").

The due process analysis focuses on the number and nature of a defendant's contacts with the forum to determine if the defendant has sufficient "minimum contacts" such "that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 326 (1945). These contacts may give rise to specific or general jurisdiction. *Daimler AG v. Bauman*, 571 U.S. 117, 138 (2014).

General jurisdiction applies to a defendant in "instances in which the continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 917 (2011) (quoting *Int'l Shoe*, 326 U.S. at 318); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, n.4 (1984). Thus, general jurisdiction applies in "only a limited set of affiliations with a forum [that] will render a defendant

4

amenable to all-purpose jurisdiction there." *Daimler*, 571 U.S. at 137. The Fifth Circuit has also

stated that it is "incredibly difficult to establish general jurisdiction in a forum other than the place

of incorporation or principal place of business" of a defendant. *Monkton Ins. Servs., Ltd. v. Ritter*,

768 F.3d 429, 432 (5th Cir. 2014).

Specific jurisdiction is a claim-specific inquiry—meaning that the factual basis for the

plaintiff's claim must arise out of or relate to the defendant's substantial contacts with the forum.

*Asashi Metal Indus. Co. v. Super. Ct.*, 480 U.S. 102, 109 (1987); *Seiferth v. Helicopteros Atuneros,*

*Inc.*, 472 F.3d 266, 274 (5th Cir. 2006) ("Is specific personal jurisdiction a claim-specific inquiry?

We conclude that it is. A plaintiff bringing multiple claims that arise out of different forum contacts

of the defendant must establish specific jurisdiction for each claim."). The Supreme Court has

recently reiterated that:

> there must be an "affiliation between the forum and the underlying controversy,
> principally, [an] activity or an occurrence that takes place in the forum State." When
> there is no such connection, specific jurisdiction is lacking regardless of the extent
> of a defendant's unconnected activities in the State. . . . *What is needed . . . is a*
> *connection between the forum and the specific claims at issue*.

*Bristol-Myers Squibb Co. v. Super. Ct.*, 137 S. Ct. 1773, 1781 (2017) (quoting *Goodyear*, 564 U.S.

at 919) (internal citations in original omitted) (emphasis added); *see also Walden v. Fiore*, 571

U.S. 277, 284, 290 (2014) ("For a State to exercise jurisdiction consistent with due process, the

defendant's *suit-related conduct* must create a substantial connection with the forum State. . . . The

proper question is *not* where the plaintiff experienced a particular injury or effect but whether the

defendant's conduct connects him to the forum in a meaningful way.") (emphasis added).

To establish specific jurisdiction over a defendant, the plaintiff must demonstrate:

"(1) whether the defendant . . . purposely directed its activities toward the forum state or purposely

availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of

action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable." *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 484 (5th Cir. 2008).

"The 'minimum contacts' inquiry is fact intensive and no one element is decisive; rather the touchstone is whether the defendant's conduct shows that it 'reasonably anticipates being haled into court.'" *McFadin*, 587 F.3d at 759 (5th Cir. 2009) (quoting *Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 469, 470 (5th Cir. 2006)). The plaintiff cannot supply the "only link between the defendant and the forum." *Carmona v. Leo Ship Mgmt.*, 924 F.3d 190, 194 (5th Cir. 2019) (quoting *Walden*, 571 U.S. at 285). Instead, the "defendant himself" must make deliberate contact with the forum. *Id.* (citing *Walden*, 571 U.S. at 284 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985))).

"If the plaintiff successfully satisfies the first two prongs, the burden shifts to the defendant to defeat jurisdiction by showing that its exercise would be unfair or unreasonable." *Seiferth*, 472 F.3d at 271 (citing *Burger King*, 471 U.S. at 382). To determine whether exercise of personal jurisdiction over the defendant would be unfair or unreasonable, the Court considers: (1) the burden on the nonresident defendant; (2) the forum state's interests; (3) the plaintiff's interest in securing relief; (4) the interest of the interstate judicial system in the efficient administration of justice;  and (5) the shared interest of the several states in furthering fundamental social policies. *Burger King*, 471 U.S. at 477. Once a plaintiff has established sufficient minimum contacts with the forum, a defendant must make a "compelling case" that exercise of jurisdiction is unfair and unreasonable. *Dontos v. Vendomation NZ, Ltd.*, 582 F. App'x 338, 343 (5th Cir. 2014) (quoting *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999)).

Federal Rule of Civil Procedure 4(k)(2) also permits a Court to exercise personal jurisdiction over a defendant; however, "the plaintiff's claim must arise under federal law, the defendant must not be subject to jurisdiction in any state's courts of general jurisdiction, and exercise of jurisdiction must comport with due process." *Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403, 1412 (Fed. Cir. 2009). Rule 4(k)(2) applies if "'the defendant contends that he cannot be sued in the forum state and refuses to identify any other where suit is possible[.]'" *Id.* at 1415 (citation omitted). Thus, the Court may not exercise personal jurisdiction over a defendant pursuant to Rule 4(k)(2) if the defendant identifies another state in which the case could have been brought. *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1294 (Fed. Cir. 2012).

## III.    ANALYSIS

### a.    Quantile is not Subject to General Jurisdiction in Texas.

Quantile argues that it is not subject to general jurisdiction in Texas because it is a company organized under the laws of and located in the United Kingdom. (Dkt. No. 76 at 8–9). TriOptima does not contest this allegation in its responses and instead focuses solely on specific jurisdiction. (Dkt. Nos. 83, 86, 112). As such, the Court finds that Quantile is not subject to general jurisdiction in Texas but instead focuses its analysis on whether Quantile is subject to specific jurisdiction.

### b.    Quantile is not Subject to Specific Jurisdiction in Texas.

TriOptima claims that Quantile has purposefully directed its activities to Texas residents and that its claims arise out of and relate to those activities. (Dkt. No. 73 at 5–7). Specifically, TriOptima alleges that Quantile has sufficient minimum contacts with Texas because it "makes its highly interactive portal available to customers in Texas," and "centers its business around compressing and optimizing contracts that invariably touch Texas parties, Texas assets and Texas laws." (Dkt. No. 83 at 6).

### i.   Quantile's Dashboard does not Establish Minimum Contacts with the State of Texas.

Quantile makes a secure portal available to its customers, called the "Dashboard." (Dkt. No. 83 at 6–7). TriOptima alleges that Quantile purposefully directs its activities at the State of Texas through its Dashboard and avers that the Dashboard is a key part of how Quantile allegedly infringes its patents. (*Id.* at 6). The Court accordingly turns to the issue of whether Quantile's Dashboard creates sufficient minimum contacts with Texas.

Quantile "(i) sends and receives critical input files necessary to create a compression or optimization proposal, and (ii) requests and receives acceptance to run a compression or optimization cycle" over the Dashboard. (*Id.*). Quantile's Dashboard is only available to its customers. (Dkt. No. 76 at 12; Dkt. No. 83 at 9). It cannot be accessed by the public. (Dkt. No. 76 at 12; Dkt. No. 83 at 9).

TriOptima alleges that the applicable case law for this inquiry is the *Zippo* sliding scale test as set forth by the Fifth Circuit in *Mink v. AAAA Development LLC*, 190 F.3d 333, 336–37 (5th Cir. 1999). Quantile disagrees. (Dkt. No. 84 at 2–3). Quantile believes the Federal Circuit has signaled its rejection of this approach by affirming a district court's decision and not applying the *Zippo* sliding scale test as set forth in a footnote in *NexLearn, LLC v. Allen Interactions, Inc.*, 859 F.3d 1371, 1378 n.4 (Fed. Cir. 2017). As Quantile's Dashboard is TriOptima's basis for personal jurisdiction as to the patent claims in this case, the proper authority for this Court to follow should come from the Federal Circuit. *See id.* at 1375 ("[The Federal Circuit] appl[ies] Federal Circuit law when reviewing claims 'intimately involved with the substance of the patent laws' and the law of the regional circuit when reviewing state law claims."). As such, whether or not the Federal Circuit has explicitly rejected the *Zippo* sliding scale approach is of no import since the Federal

Circuit has clearly not adopted it.[1] Accordingly, this Court does not apply the *Zippo* sliding scale test as to the patent claims in this case but instead looks to the guidance set forth in *NexLearn*.

In *NexLearn*, the Federal Circuit instructs that "[t]he existence of [a defendant's] website, without more, is insufficient to show that [the defendant] has minimum contacts with [the forum state.]" 859 F.3d at 1378. "Something more is needed—whether it be actual sales, targeted advertising, or contractual relationships—to connect the defendant's infringing acts of making, using, offering, or selling its product with the forum State." *Id.* at 1379. "What is sufficient may vary from case to case, but it cannot be that the mere existence of an interactive website, like the existence of an out-of-state store, is suit-related conduct creating a substantial connection with the forum State." *Id.* (internal citations omitted).

The Court finds that the critical "something more" is lacking in this case. TriOptima mainly argues that Quantile's Dashboard is "highly interactive" and that it is therefore sufficient to establish minimum contacts. (Dkt. No. 83 at 6–9). While it is true that much of Quantile's business and customer relations are managed through its Dashboard, TriOptima has not provided any evidence that any of Quantile's customers who have access to the Dashboard are based in, or reside in Texas, or even that anyone in Texas has access to the Dashboard. (*Id.*). TriOptima alleges that it "is aware of numerous U.S. individuals not located in [New York] that were approached by Quantile to purchase its compression products and services," but falls short of asserting that any of those individuals are in Texas. (*Id.* at 9). Additionally, the fact that many of Quantile's customers have significant operations in Texas, even operations relating to derivatives, does not mean that of Quantile's customers, those who use Quantile's services are based in Texas. (*Id.* at

---

[1] Even if the Court were to apply the regional circuit law and the *Zippo* sliding scale approach, and accepting that Quantile's Dashboard is highly interactive, personal jurisdiction would still not be appropriate in this case on the basis of Quantile's Dashboard because Quantile does not purposefully direct the use of its Dashboard to the State of Texas.

9–10). In fact, quite the opposite is true—only specific individuals are allowed to access the Dashboard and those individuals are based in the New York area. (Dkt. No. 84 at 4). Quantile does not seek out business relationships with those in Texas; rather, it seeks out business relationships most often with large banks who are headquartered in major international financial centers like New York. (Dkt. No. 73 at 6; Dkt. No. 76 at 10–12; Dkt. No. 83 at 9). Also, it does not matter that the Dashboard is hypothetically accessible to individuals in Texas—what matters is whether the use of the Dashboard is purposefully directed to and used by those in Texas. Such is not the case. Even, as alleged, if an individual who has access to the Dashboard travels to Texas and has access the Dashboard while in Texas, this is not enough to establish that Quantile has minimum contacts with Texas. "The Court's focus is on [the defendant's] actions, not third-party customers." *Blue Spike, LLC v. Tex. Instruments, Inc.*, No. 6:12-CV-499, 2014 WL 11829323, at *3 (E.D. Tex. Mar. 31, 2014). If Quantile's customers were headquartered in Texas and conducted its business relating to derivatives and compression in Texas, this would be a different analysis, but such is not the case here. Quantile's Dashboard, and the use of such Dashboard by United States residents based in New York, is insufficient to establish personal jurisdiction in Texas.

### ii.  Quantile's Termination of Texas-Related Contracts is Insufficient to Establish Minimum Contacts.

TriOptima next argues that this Court has personal jurisdiction over Quantile because its compression and optimization services most likely terminate Texas-related contracts. (Dkt. No. 83 at 11–12). TriOptima does not point to any specific contract or any evidence that such Texas-related contract termination occurs. While it may be probable that termination of Texas-related contracts does occur, given the large number of trades optimized by companies like Quantile, such occurs merely incident to the fact that Quantile's customers trade on derivative contracts from all over the United States—not because there is any purposeful direction of Quantile's activities to

the State of Texas. As such, the Court finds that any contacts with the State of Texas in this case are tenuous at best and insufficient to establish minimum contacts under applicable precedent.

Similarly, TriOptima also argues that this Court has personal jurisdiction over Quantile because Quantile's customers are active in trading oil and gas commodities and Quantile optimizes such trades involving oil and gas commodities. (Dkt. No. 112 at 5–7). The fact that Quantile optimizes whatever risk its customers have—even risk that includes trading in oil and gas commodities—is insufficient to establish that Quantile has minimum contacts with the State of Texas. While there can be no doubt that Houston, Texas is a major energy center, the fact that Quantile's customer banks trade in commodities which include oil and gas and are optimized by Quantile, such trades among thousands of others do not mean that Quantile purposefully directs its activities at Texas.

### iii.  Quantile's Proposal File is Insufficient to Establish Minimum Contacts Under the Stream of Commerce Theory.

Third, TriOptima argues that Quantile has minimum contacts with Texas under the stream of commerce theory. (Dkt. No. 83 at 11–12). TriOptima argues that Quantile delivers its product— a "proposal file"—to U.S. customers via the Dashboard and that "[t]his file contractually confirms that customer's agreement that Quantile may effectuate cancellation of the hundreds or thousands of trades therein." (*Id.* at 11). From this, TriOptima argues that Quantile "delivers its products into the stream of commerce with the expectation that they will be purchased by customers in the forum State." (*Id.* at 11–12). Quantile disputes that its proposal file is a product, and alleges that the "proposal files delivered to each individual customer are specifically requested by such customer and specifically tailored for that customer, and are not simply injected into a stream of commerce where they may be bought by the public." (Dkt. No. 84 at 7). In any event, TriOptima has put forth no evidence establishing that Quantile expects its proposal files will be purchased in Texas. In fact,

the evidence before the Court suggests the opposite. None of the individuals authorized to receive a proposal file through the Dashboard are located in Texas. (Dkt. Nos. 84-1, 84-2). As such, the Court finds that TriOptima has failed to establish that Quantile's proposal file is sufficient to establish minimum contacts with Texas.

### c. Rule 4(k)(2) Does Not Apply.

In its Second Amended Complaint, TriOptima alleged that personal jurisdiction is appropriate under Rule 4(k)(2). (Dkt. No. 73 at 5). However, in the Motion, Quantile recognized that "Quantile would have been and is subject to personal jurisdiction in New York." (Dkt. No. 76 at 18). Seeing as Quantile has asserted that it is subject to personal jurisdiction in New York, Rule 4(k)(2) does not apply here. (*Id.* at 18–20).

### d. Traditional Notions of Fair Play and Substantial Justice.

Since this Court has determined that Quantile does not have sufficient minimum contacts with Texas, it need not determine whether the exercise of personal jurisdiction in this case offends "traditional notions of fair play and substantial justice"—including whether Quantile's connection, if any, with First Derivatives, AcadiaSoft, and Markit make the exercise of personal jurisdiction fair. *Asahi*, 480 U.S. at 113 (quoting *Int'l Shoe*, 326 U.S. at 316). Even so, Quantile's ties with third parties who own stock in Quantile (First Derivatives), who ran "trial machine" datacenters in Texas (AcadiaSoft), and who support a service Quantile uses with personnel based in Texas (Markit), are just the kind of "random, fortuitous, or attenuated contacts" which are insufficient to support personal jurisdiction. *Burger King*, 471 U.S. at 475.

### e. All Other Claims.

TriOptima alleges that this Court has personal jurisdiction over its trade secret misappropriation claims because Quantile used trade secrets taken by a former TriOptima

employee based in the United Kingdom "to conduct its business in the U.S. and Texas, including through the use of the Dashboard." (Dkt. No. 83 at 12). Quantile's Dashboard is the only specific argument that TriOptima makes regarding personal jurisdiction over its trade secret misappropriation claims. (Dkt. No. 83, 86, 112). Even considering the *Zippo* sliding scale test, and accepting that Quantile's dashboard is highly interactive, the Court concludes that Quantile does not purposefully direct its Dashboard or market the use of its Dashboard within the State of Texas. *See infra* at 8-10. No user permitted to access the Dashboard is based in Texas. (Dkt. No. 84 at 4). As such, even under Fifth Circuit law, the Dashboard is insufficient to establish minimum contacts with the State of Texas. Further, TriOptima claims that this Court has supplemental personal jurisdiction over its related state law claims. (Dkt. No. 73 at 8; Dkt. No. 83 at 12–13). As there is no personal jurisdiction in this case which the state law claims could supplement, this Court does not have personal jurisdiction over Quantile as to any of TriOptima's remaining state law claims.

## IV.  CONCLUSION

In light of the foregoing, the Court finds that Quantile's Motion to Dismiss for Lack of Personal Jurisdiction, or, in the Alternative, to Transfer Venue (Dkt. No. 76) should be and hereby is **GRANTED** as set forth herein. The above-captioned case is **DISMISSED WITHOUT PREJUDICE**, and as a part hereof Quantile's Alternate Motion to Transfer Venue and its Motion to Stay Discovery Pending Decision on its Motion (Dkt. No. 20) are **DENIED AS MOOT**.

So ORDERED and SIGNED this 25th day of November, 2020.

RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE